# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 6675 | **DATE** | 3/17/2004 |
| **CASE TITLE** | Mihailovic vs. Soldato | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court grants in part and denies in part the motions to dismiss filed by Soldato (11-1) and by defendants Mach, Cimaglia, and Kroneik (21-1). Counts 1,3,4 and 5 are dismissed as to all defendants. Counts 2 is dismissed as to defendants Mach, Cimaglia, and Kroniek, but not as to Soldato. Soldato is directed to answer Count 2 on or before 3/24/04.

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | MAR 22 2004 date docketed | |
| | Notified counsel by telephone. | | | | 47 |
| | Docketing to mail notices. | | | docketing deputy initials | |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | | date mailed notice | |
| OR | courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ALEKSANDAR MIHAILOVIC and SOCCER MADE IN AMERICA, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> CARMEN SOLDATO, Mayor of Darien, MAGGIE KRONIEK, NANCY CAMPAGNOLO, AL CIMAGLIA, KURT MACH, and DARIEN DYNAMO SOCCER CLUB <br><br> Defendants. | Case No. 03 C 6675 |

DOCKETED
MAR 2 2 2004

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiffs Aleksandar Mihailovic and Soccer Made in America have filed suit against Carmen Soldato; the Mayor of Darien; Nancy Campagnolo, a member of the Darien Park District Board; the Darien Dynamo Soccer Club; Kurt Mach, president of the club; Al Cimaglia, a club board member; and Maggie Kroniek, a Darien resident. Plaintiffs allege that the defendants conspired to violate their due process and equal protection rights in relation to their employment contract with the Darien Park District. Plaintiffs also assert several state law claims, including defamation, intentional interference with business, conspiracy, and breach of contract. Plaintiffs settled with Campagnolo, and she has been dismissed from the case. Soldato, Mach, Cimaglia, and Kroniek have moved to dismiss pursuant to Rule 12(b)(6). For the reasons stated below, the motions are granted except as to Count 2, which remains as to defendant Soldato only.

47

**Facts**

The following facts are taken from plaintiff's amended complaint, which the Court accepts as true for the purposes of defendants' motions to dismiss.

In the year 2000, Mihailovic and SMIA (which we will collectively refer to as Mihailovic) entered into a contract with the Darien Park District to act as the director of soccer operations and marketing director for the Darien Sportsplex. Mihailovic also entered into a contract with the Darien Dynamo Soccer Club, a private not for profit entity which sponsors youth soccer teams, to provide services as the director of coaching.

Starting in 2002, Mach and Cimaglia began to publicly criticize Mihailovic for "bringing in Mexicans" to the soccer club. In March 2003, Kroniek and Cimaglia made statements to the Darien Park District Board and to the public that Mihailovic was engaging in a "conflict of interest" and claiming that he had engaged in other inappropriate or unlawful acts. Shortly thereafter, Kroniek expressed concerns publicly and to the Park District Board about the financial future and community reputation of the Sportsplex. In doing so, Kroniek made several negative statements regarding Mihailovic, including allegations that he had been banned from the NCAA for foul play and bringing in players from other countries; was kicked out of another park district for "cheating them out of money"; was not playing by the rules; was engaging in a "conflict of interest;" and doing things that "were not proper."

Soldato made negative statements about Mihailovic at the April 2003 Park District Board meeting, specifically that the payments Mihailovic had received were "in question" and that he should be "looked into," that "we all know about his background," "that there was all kinds of double dipping going on," that Mihailovic was violating the rules, and that "we cannot have

people dealing with kids that have any question about his background." In May 2003, Soldato made statements to the Park District Board to the effect that Mihailovic was "feathering his nest." Shortly thereafter, Soldato made statements to the Board and the public that the Park District "had hired a guy that was thrown out of college for violations" and "has conflicts all over the place." Soldato told the Board that he was going to keep coming to the meetings until they "let the professionals run [the Sportsplex]" and that "you will think I am harassing you." Around June 2003, Soldato began airing videotapes on the local cable television channel from the Park District Board meetings in which he and the other defendants made the previously referenced statements regarding Mihailovic.

Mihailovic alleges that because of Soldato's position with the City of Darien, and due to the defendants' statements (all of which Mihailovic says were false), the Park District decided to terminate plaintiffs' contract. Plaintiffs also allege that the Park District acted as it did due to Mihailovic's national origin (Yugoslavian) and his attempt to diversify the club by bringing in minorities. Plaintiffs filed the instant suit alleging that because of defendants' actions they have essentially been blackballed from the community, and have been unable to pursue their chosen occupation.

## Discussion

Dismissal under Rule 12(b)(6) is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Kennedy v. Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 695 (7th Cir. 1999). In considering the motion, the court accepts as true all well pleaded facts alleged in the complaint and draws reasonable inferences from those facts in favor of the plaintiff.

3

*Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999); *Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996).

**Count 1 (procedural due process)**

Mihailovic claims that the defendants deprived him of both liberty and property without due process of law. The former claim is that the allegedly defamatory statements by Soldato, Mach, Cimaglia, and Kroniek, combined with the Park District Board's termination of his contract, deprived him of a liberty interest by stigmatizing him in a way that prevents him from obtaining future employment in his chosen field.

A person does not have a protectible liberty interest in his reputation, *see Paul v. Davis*, 424 U.S. 693, 701 (1976), and thus simple defamation by the government does not deprive a person of liberty within the meaning of the Due Process Clause, even when it impairs one's future employment prospects. *See, e.g., Siegert v. Gilley*, 500 U.S. 226, 234 (1991); *Paul*, 424 U.S. at 697. Rather, the constitution's procedural safeguards – in this context, the right to a name-clearing hearing – are invoked only when the injury resulting from the defamation is combined with the alteration of the person's legal status, such as the termination of public employment. *Paul*, 424 U.S. at 708-09, 710; *see also, e.g., Hojnacki v. Klein-Acosta*, 285 F.3d 544, 548 (7th Cir. 2002).

Conversely, a termination of employment is actionable under the Fourteenth Amendment as a deprivation of liberty only "if it is accompanied by a publicly announced reason that impugns the employee's moral character or implies dishonesty or other job-related moral turpitude." *Omosegbon v. Wells*, 335 F.3d 668, 675 (7th Cir. 2003) (quoting *Hedrich v. Bd. of Regents of Univ. of Wis. Sys.*, 274 F.3d 1174, 1184 (7th Cir. 2001)). In other words, the

4

defamation must be "incident to the termination of [the plaintiff's] employment." *Siegert v. Gilley*, 500 U.S. 226, 234 (1991). The defamatory statement must be published "in the context of termination." *McMath v. City of Gary, Ind.*, 976 F.2d 1026, 1032 (7th Cir. 1992).

Such is not the case here. Mihailovic does not allege that the Park District Board made or communicated any defamatory statements about him incident to his termination. Rather, his contention is that Soldato and the others made defamatory statements, and that the Park District relied on these to terminate him. That is not sufficient. Due process does not require a hearing in this context "when there is no public disclosure of the reasons for the discharge." *Bishop v. Wood*, 426 U.S. 341, 348 (1976). *See also Codd v. Velger*, 429 U.S. 624, 628 (1977) (*per curiam*) (due process requires hearing on discharge of government employee "if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination.").

For these reasons, Mihailovic's claim that he was deprived of liberty fails to state a claim upon which relief may be granted, and we need not address the defendants' remaining arguments in support of dismissal of that claim.

Mihailovic's other due process claim is that he was deprived of property, specifically his employment contract with the Park District, without due process. Mihailovic's ability to maintain this claim depends on whether he had a property right in continued employment. *See Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 538 (1985), citing *Board of Regents v. Roth*, 408 U.S. 564, 576-78 (1972).

Property interests are created not by the Constitution, but by rules or understandings that stem from some other source, such as state law. *Id.* In the employment context, a property

5

interest can be created in one of two ways: "1) by an independent source such as state law securing certain benefits; or 2) by a clearly implied promise of continued employment." *Phelan v. City of Chicago*, 347 F.3d 679, 681 (7th Cir. 2003) (quoting *Shlay v. Montgomery*, 802 F.2d 918, 921 (7th Cir. 1986)). Mihailovic's complaint does not contain allegations sufficient to support a claim under either of these alternatives. The former theory typically involves allegations that the plaintiff's employment contract permitted termination only for cause. *See, e.g., Dixon v. City of New Richmond*, 334 F.3d 691, 694 (7th Cir. 2003). No such allegation is found in the complaint. Absent a contrary showing, an employment agreement is presumed to be terminable at-will, that is, at any time and for any reason. *Corcoran v. Chicago Park District*, 875 F.2d 609, 612 (7th Cir. 1989). At-will employees, generally speaking, do not hold a property interest in their employment that is protected by the Due Process Clause, *see, e.g., Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 624 (7th Cir. 2002), though as indicated above the Seventh Circuit appears to have recognized a narrow exception for cases in which the at-will employee has "clearly implied promise in their continued employment." *See Phelan*, 347 F.3d at 682. But no such allegation appears in the complaint in this case.

Contrary to defendants' argument, the concept of notice pleading does not require a plaintiff who relies on an employment contract in a case such as this one to attach it to the complaint. But the plaintiff must at least make allegations sufficient to reflect the existence of a property interest that is subject to due process protection. Such an allegation is conspicuously absent from Mihailovic's complaint. His claim of deprivation of property without due process must therefore be dismissed.

For these reasons, the Court grants defendants' motions to dismiss Count 1, plaintiffs'

6

due process claim.[1]

**Count 2 (equal protection)**

In Count 2, Mihailovic alleges that the defendants conspired to deprive him of equal protection of the laws. This appears to be a claim that defendants acted based on Mihailovic's national origin and because he had recruited persons of Mexican origin to play on the soccer club, and that he was singled out for arbitrary and differential treatment as a "class of one."[2] Defendants' arguments regarding this claim primarily concern whether they can be said to have acted under color of law.

The equal protection clause "can be violated only by conduct that may fairly be characterized as 'state action.'" *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). And liability under 42 U.S.C. § 1983 requires a showing that the defendant deprived the defendant of a constitutional right under "color of law." *E.g., Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). The color-of-law and state action requirements exclude from the reach of the Equal Protection Clause and § 1983 conduct that is merely private, no matter how discriminatory or wrongful it may be. *See, e.g., Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982).

Action is taken under color of law "when it involves a misuse of power, 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Honaker v. Smith*, 256 F.3d 477, 484 (7th Cir. 2001) (quoting *West v. Atkins*, 487

---

[1] The Court need not at this time deal with the remaining arguments offered by defendants in support of dismissal of Count 1.

[2] Count 2 seems to contain a mish-mosh of other assertions, but there is no contention that any of these set forth a claim for deprivation of constitutional rights distinct from the due process claim in Count 1 and the equal protection claim articulated above.

U.S. 42, 49 (1988)). Not every act by a state or local government official is an action under color of law; to qualify the act must be "related in some way to the performance of the duties of the [governmental] office." *Id.*

The color of law requirement does not require the defendant to be a government official. It is enough that he is a willful participant in joint action with the State or its agents. "Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions." *Dennis v. Sparks,* 449 U.S. 24, 27-28 (1980).

Soldato's comments at Park District Board meetings were not actions under color of law. There is nothing in the complaint that so much as hints that his opportunity to speak at the meetings depended upon his official position as Mayor of Darien. Rather, like Mach, Cimaglia, and Kroniek, Soldato spoke at what appears to have been the public-comment portion of the Board's meetings. Thus to the extent plaintiffs' claim depends on an allegation that Soldato was a state actor, it cannot succeed. Likewise, if plaintiffs' claim is simply that Mach, Cimaglia, and Kroniek conspired with Soldato to orchestrate negative public commentary, the claim fails.

Rather, only the Park District Board, the governmental entity with which Mihailovic claims to have had a contractual relationship, was in a position to deny him equal protection of the laws. Thus a conspiracy or joint action between Soldato, Mach, Cimaglia, and Kroniek would be insufficient to impose liability on them under § 1983. These defendants may be held liable under § 1983 only if, and to the extent, they acted jointly with the Board or, perhaps, one of the Board's members to deny Mihailovic equal protection.

The mere fact that the Board acted in response or reaction to Soldato, Mach, Cimaglia, and/or Kroniek's comments referenced in the complaint does not constitute joint action or

8

conspiracy. The essence of conspiracy is an agreement. *See, e.g., Hampton v. Hanrahan*, 600 F.2d 600, 624 (7th Cir. 1979), *rev'd in part on other grounds,* 446 U.S. 754 (1980). Action merely taken in response to a comment, argument, petition, or remonstrance is not conspiracy or joint action. To draw an analogy, when a judge rules in a litigant's favor based on an argument the litigant makes in court, that does not make the judge and the litigant co-conspirators or joint actors. *See Dennis,* 449 U.S. at 28.

The fairest reading of plaintiffs' complaint is that Mach, Cimaglia, and Kroniek are claimed to have acted jointly only with Soldato, not with Campagnolo or other members of the Park District Board. *See, e.g.,* Am. Cplt. ¶¶ 43, 45, 29, 39, 42. For the reasons indicated above, this is insufficient to impose liability on those defendants under § 1983. Matters are different with regard to Soldato; there is a square allegation that he conspired directly with Campagnolo. *See id.* ¶ 46. This allegation is sufficient under *Dennis* to state a claim that Soldato acted under color of law. In this regard, it appears Mihailovic contends that Soldato may have acted behind the scenes to put the arm on the Board or at least some of its members to terminate Mihailovic's contract. If so, that would likewise be sufficient to impose liability on Soldato.

We turn finally to Soldato's claim that he is entitled to "absolute immunity" from § 1983 liability for his actions. The argument is frivolous. In support of his contention, Soldato cites, first of all, a case that discusses the immunity that applies to actions taken by legislators in their legislative capacity. *See* Soldato Mot. at 5. That has nothing to do with this case. Soldato also relies on the Illinois Tort Immunity Act, *see id.* at 6, but that has nothing to do with immunity from federal liability under § 1983. Finally, and frankly rather bizzarely, Soldato relies on the doctrine of state defamation law of absolute *privilege* (not *immunity*), *see id.* at 4 (incorporating

9

Argument III.B), which again has nothing to do with § 1983 liability. The Court finds it hard to imagine how Soldato's counsel could possibly believe that this state law privilege doctrine can be transmogrified into a rule of immunity from federal liability.

**Counts 3-5 - defamation, intentional interference, and conspiracy**

Soldato's claim of absolute privilege and immunity under the Tort Immunity Act fares no better with regard to Mihailovic's state law defamation claim (Count 3). As indicated earlier, the complaint, fairly read, attacks Soldato's public comments that cannot fairly be said to have been made as part of his official duties as Mayor of Darien. The Court recognizes that plaintiffs also sought to impose liability on Soldato on the opposite theory (which we have rejected), but federal pleading rules specifically permit a party to plead in the alternative. Fed. R. Civ. P. 8(e)(2).

Soldato's argument, however, that his statements are entitled to absolute privilege from liability for state law defamation, because they were made in a legislative forum, is well taken. Whether a defamatory statement is protected by absolute privilege is question of law for the court. *Layne v. Builders Pluming Supply Company, Inc.*, 210 Ill. App. 3d 966, 969, 569 N.E.2d 1104, 1106 (1991), citing *Thomas v. Petrulis*, 125 Ill. App. 3d 415, 417, 465 N.E.2d 1059, 1060 (1984). Absolute privilege extends to statements made by private citizens, as well as public officials, as part of legislative and judicial proceedings, *see Joseph v. Collins*, 272 Ill. App. 3d 200, 211, 649 N.E.2d 964, 972 (1995), whether federal, state, or municipal. *Larson v. Doner*, 32 Ill. App. 2d 471, 474, 178 N.E.2d 399 (1961). The defense of privilege rests on the notion that "conduct which otherwise would be actionable [should] escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to the plaintiffs reputation." *Krueger v. Lewis*, 342 Ill. App.

10

3d 467, 473, 794 N.E.2d 970, 974-75, (2003) (quoting W. Keeton, Prosser & Keeton on Torts, § 114, at 815 (5th ed. 1984)).

The defendants' statements are claimed to have been made at one or more meetings of the Park District Board, which were legislative proceedings. *See Park District of Highland Park v. Becker*, 60 Ill. App. 2d 463, 468, 208 N.E.2d 621, 623-24 (1965); *see also Steier v. Batavia Park District*, 283 Ill. App. 3d 968, 978, 670 N.E.2d 1215, 1223 (1996). Moreover, their alleged statements all relate to payments that were made by the Park District to the plaintiffs as well as plaintiffs' continued employment by the Park District. Public comments to a legislative body concerning the conduct of its public business are the type of conduct that the privilege described above is designed to protect. Citizens ought not be chilled from making public comments to legislative bodies by fear of being subjected to suit for defamation. Plaintiffs' state law defamation claims are therefore dismissed.[3]

Under Illinois law, privileges that bar defamation actions also extend to related tort actions based on the same conduct, such as conspiracy and intentional interference with business relations. *Geick v. Kay*, 236 Ill. App. 3d 868, 869-70, 603 N.E.2d 121, 129-30 (1992). For this reason, Counts 4 and 5 of the amended complaint must be dismissed as well.

**Conclusion**

For the reasons stated above, the Court grants in part and denies in part the motions to dismiss filed by Soldato [docket # 11-1] and by defendants Mach, Cimaglia, and Kroniek [docket # 21-1]. Counts 1, 3, 4 and 5 are dismissed as to all defendants. Count 2 is dismissed as to

---

[3] Though Mach, Cimaglia, and Kroniek did not include this argument in their motion to dismiss, the privilege defense applies to them just as it does to Soldato.

11

defendants Mach, Cimaglia, and Kroniek, but not as to Soldato. Soldato is directed to answer Count 2 on or before March 24, 2004.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 17, 2004